## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

#### CHARLESTON

JIMMY K. KAZEE, JR.,

      Plaintiff,

v.                                        CASE NO. 2:05-cv-00085

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

#### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Jimmy K. Kazee, Jr. (hereinafter referred to as "Claimant"), filed an application for SSI on May 6, 2002, alleging disability as of April 1, 1996, due to bipolar disorder, arthritis, asthma, and head, knee, wrist, liver and shoulder impairments. (Tr. at 93-95, 104.)  The claim was denied initially and upon reconsideration.  (Tr. at 73-77, 80-82.)  On April 11, 2003,

Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 83.) The hearing was held on November 5, 2003, before the Honorable Theodore Burock. (Tr. at 346-94.) By decision dated June 25, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-24.) The ALJ's decision became the final decision of the Commissioner on December 3, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-9.) On January 31, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in

substantial gainful activity since the alleged onset date.  (Tr. at 16.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of borderline intellectual functioning, chronic obstructive pulmonary disease and a severe mental impairment currently diagnosed as anxiety.  (Tr. at 16.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18-19.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 20.)  As a result, Claimant cannot return to his past relevant work.   (Tr. at 21.)   Nevertheless, the ALJ concluded that Claimant could perform jobs such as cashier, small parts assembler and bench/table work (packing), which exist in significant numbers in the national economy.  (Tr. at 22.)  On this basis, benefits were denied.  (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was forty-six years old at the time of the administrative hearing.  (Tr. at 350.)  Claimant has a tenth grade education.  (Tr. at 352.)  In the past, he worked as a plumber's helper, a grill installer, a drill operator, a carpenter's helper and a dry wall installer.  (Tr. at 380-81.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record.  Because Claimant challenges only the ALJ's findings related to his mental impairments, the court will briefly summarize that evidence below.

Claimant's school records indicate that he received Cs, Ds and Fs in most of his junior high and high school classes from 1969

through 1974.  (Tr. at 155-56.)

The record includes a Social History from Logan-Mingo Area Mental Health, Inc. dated January 16, 2003.  Joyce Goodman, B.A., L.S.W. noted Claimant's diagnosis per physician as bipolar disorder with a level of functioning of 60.  (Tr. at 171.)

Ulysses D. Agas, M.D. completed a West Virginia Department of Health and Human Resources, General Physical (Adults) on April 15, 2002, and diagnosed Claimant with manic depressive disorder.  He stated that Claimant was unable to work and indicated he required a psychiatric consultation and treatment.  (Tr. at 177.)

H. Hoback Clark, M.D., a State agency medical source, completed a Mental Residual Functional Capacity Assessment on August 2, 2002, and opined that Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions and interact appropriately with the general public. (Tr. at 189-90.)

Dr. Clark also completed a Psychiatric Review Technique form on which she opined that Claimant suffered from borderline intellectual functioning and bipolar syndrome and that Claimant has mild restriction in activities of daily living, moderate difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace and no repeated episodes of decompensation.  (Tr. at 193-06.)

The record includes treatment notes from Logan-Mingo Area

Mental Health, Inc. dated August 5, 1998, through September 17, 2002.  (Tr. at 207-51.)

John B. Koch, M.A. examined Claimant on January 9, 2003, at the request of the State disability determination service.  Mr. Koch diagnosed bipolar II disorder and panic attacks with agoraphobia on Axis I and made no Axis II diagnosis.  (Tr. at 267.) Mr. Koch noted that Claimant's social functioning during the examination was moderately deficient.  Claimant was somewhat distant, had infrequent eye contact and no sense of humor.  (Tr. at 266.)  Mr. Koch opined that Claimant's prognosis was poor.  (Tr. at 267.)

Debra L. Lilly, Ph.D., a State agency medical source, completed a Mental Residual Functional Capacity Assessment on January 31, 2003, and opined that Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and interact appropriately with the general public.  (Tr. at 268-69.)

Dr. Lilly also completed a Psychiatric Review Technique form on which she opined that Claimant's impairments included borderline IQ, bipolar disorder and a history of substance abuse.  She opined that Claimant had mild restriction in activities of daily living, moderate difficulties maintaining social functioning, moderate

difficulties in maintaining concentration, persistence and pace and no repeated episodes of decompensation.  (Tr. at 271-83.)

The record includes treatment notes and other evidence from Antonio R. Diaz, Jr., M.D. dated April 4, 2003, through October 17, 2003.  Dr. Diaz diagnosed bipolar disorder, mixed and panic disorder with agoraphobia.  (Tr. at 324.)  Dr. Diaz completed a Mental Functional Capacities Questionnaire and Assessment on November 12, 2003.  He rated Claimant's abilities as poor in almost all categories.  (Tr. at 325-31.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to find that Claimant suffered from a severe bipolar disorder; (2) the ALJ erred in the weight afforded the opinion of Claimant's treating psychiatrist; and (3) the ALJ failed to include all of Claimant's limitations in the residual functional capacity finding and hypothetical question to the vocational expert.  (Pl.'s Br. at 6-17.)

The Commissioner argues that (1) the ALJ properly weighed the evidence of record from Dr. Diaz; (2) the ALJ properly assessed Claimant's mental impairments; and (3) the Commissioner met her burden at step five of the sequential analysis.  (Def.'s Br. at 11-16.)

In his decision, the ALJ determined that Claimant suffered

from severe mental impairments, including borderline intellectual functioning and a "severe mental impairment currently diagnosed as 'anxiety.'" (Tr. at 16.)  Regarding Claimant's anxiety, the ALJ found that "information recently entering the record from psychiatrist Diaz's facility indicated that although diagnosed as a depressive disorder at one time, the current diagnosis involves anxiety."  (Tr. at 18.)  The ALJ went on to reject Claimant's testimony about complete isolation and concluded that Claimant's anxiety disorder "is otherwise nonspecified, and also seems to have bipolar features associated with it."  (Tr. at 18.)

In evaluating Claimant's mental impairments and the "B" criteria at step three of the sequential analysis, the ALJ concluded that Claimant had slightly limited activities of daily living, moderately limited social functioning, moderately limited concentration, persistence and pace and no episodes of decompensation.  (Tr. at 18.)  The ALJ ultimately concluded that Claimant's residual functional capacity was reduced from a mental standpoint by an ability to read and/or print simple messages, an ability to handle only simple addition and subtraction and a need for only simple, routine and repetitive tasks.  (Tr. at 20.)  In making these findings, the ALJ explained that he rejected the opinions of Claimant's treating physician, Dr. Diaz, on the Mental Functional Capacities Questionnaire and Assessment he completed on November 12, 2003, and adopted the opinions of Mr. Koch.  (Tr. at

21, 325-31.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence for the following reasons.  First, the ALJ erred in failing to find that Claimant's bipolar disorder was a severe impairment.  Every source who treated or examined Claimant for his mental impairments made such a diagnosis, including treating sources at Logan-Mingo Mental Health, Inc. (Tr. at 171, 207), Dr. Diaz (Tr. at 324-25), Claimant's most recent treating source, and Mr. Koch (Tr. at 267), who examined Claimant at the request of the State disability determination service and whose opinion was adopted by the ALJ. Even the nonexamining State agency medical sources who completed Psychiatric Review Technique forms all noted  this diagnosis. (Tr. at 196, 274.)  Moreover, substantial evidence of record supports a finding that Claimant's bipolar disorder was a medically determinable mental impairment that significantly limited his ability to do work-related activities.  20 C.F.R. § 416.920a(b)(1) (2004); 20 C.F.R. § 416.920(c) (2004).

Second, the ALJ determined that Claimant had moderate limitations in social functioning, opinions also expressed by Mr. Koch (Tr. at 266) and both State agency medical sources (Tr. at 203, 281), yet the ALJ failed to include any resulting limitations in his residual functional capacity finding.  In the past, an ALJ was required to complete a Psychiatric Review Technique form

("PRTF") and append it to his decision. See 20 C.F.R. § 416.920a(d) (1999) (stating that an ALJ must complete a "standard document" outlining the steps of the procedure for evaluating mental impairments, i.e., the PRTF); Social Security Ruling ("SSR") 96-8p, 1996 WL 362207, at *34477 (July 2, 1996) ("The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings.").

The regulations have since been amended, and no longer require an ALJ to complete a PRTF and attach it to the decision. Instead, 20 C.F.R. § 416.920a(e)(2) (2004) eliminates the need for the ALJ to complete a PRTF, but continues to require the ALJ to incorporate in his or her decision, findings related to the severity analysis:

> At the [ALJ] hearing and Appeals Council levels, the written decision issued by the [ALJ] or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

While the ALJ complied with this requirement by noting his findings related to the "B" criteria at the third step of the

sequential analysis, the ALJ did not go on to assess these limitations in social functioning in his residual functional capacity assessment.   SSR 96-8p instructs that "the mental [residual functional capacity assessment] used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF."[1]  SSR 96-8p, * 34477.  The ALJ's residual functional capacity finding and resulting hypothetical question are devoid of any limitations related to Claimant's moderate limitation in social functioning, despite the fact that the ALJ stated that he adopted the opinion of Mr. Koch, who opined that such limitations existed.   This error, coupled with the ALJ's failure to make an explicit finding that Claimant's bipolar disorder was a severe impairment, require a recommendation of remand pursuant to sentence four of 42 U.S.C. § 405(g).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge GRANT the Plaintiff's Motion for Judgment on the Pleadings, DENY the Defendant's Motion for Judgment on the Pleadings, REVERSE the final decision of the

---

[1]   SSR 96-8p was drafted when the regulations still required the ALJ to complete a PRTF.  Nevertheless, SSR 96-8p's directives on the ALJ's duty at steps four and five of the sequential analysis to expound on the findings made at step three of the sequential analysis related to the four areas of functioning remain instructive.

Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and

Recommendation and to mail a copy of the same to counsel of record.

<table>
<tr><td>   November 16, 2005   </td><td><em>Mary E. Stanley</em></td></tr>
<tr><td align="center">Date</td><td>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>